IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RAYMOND GOEDEKE,                            )
                                            )
          Petitioner,                       )
                                            )
v.                                          )          CIVIL ACTION NO. 5:05-0554
                                            )
THOMAS MCBRIDE, Warden,                     )
Mount Olive Correctional Complex,           )
                                            )
          Respondent.                       )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Respondent's Motion to Dismiss for Failure to State a Claim and Motion for

Summary Judgment. (Document Nos. 33 and 35.) Respondent has filed a Memorandum in Support

of its Motions. (Document No. 36.) Petitioner has filed a Reply Brief to Respondent's Motion to

Dismiss and Motion for Summary Judgment. (Document No. 39.)[1]

## PROCEDURAL AND FACTUAL BACKGROUND

On June 10, 1994, after a trial by Jury, Petitioner was convicted in the Circuit Court of

Raleigh County, West Virginia, of the first degree murder of Ms. Margie Stewart on June 7, 1993.

State v. Goedeke, Criminal Case No. 93-F-515. (Document No. 35, Exhibit 2.)[2] The Circuit Court

---

[1] Petitioner filed his Section 2254 Petition acting *pro se.* The District Court appointed
counsel in January 2006. (Document No. 9.) Documents which he has submitted *pro se* are held to
a less stringent standard than if they were prepared by a lawyer, and therefore, are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] *W.Va.Code* § 61-2-1 provides that "[m]urder . . . by any willful, deliberate and premeditated
killing . . . is murder of the first degree. All other murder is murder of the second degree."
*W.Va.Code* § 61-2-2 provides that "[m]urder of the first degree shall be punished by confinement
in the penitentiary for life." *W.Va.Code* § 61-2-3 provides that "[m]urder of the second degree shall
be punished by a definite term of imprisonment in the penitentiary which is not less than ten nor
more than forty years. A person imprisoned pursuant to the provisions of this section is not eligible

sentenced Petitioner on June 28, 1994, to life imprisonment without mercy. (Id., Exhibit 3.) On

November 23, 1994, Petitioner, by counsel, petitioned the West Virginia Supreme Court of Appeals

for review of his conviction and sentence raising the following assignments of error (Id., Exhibit 4.):

1. The trial court erred in permitting the jury to consider the charge of first degree murder where the court failed to properly instruct the jury on the element of premeditation and allowed the jury to infer intent both terms constituting essential elements of the crime.

2. The trial court erred by admitting into evidence eleven gruesome photographs of the crime scene, a bloody laundry basket, and blood stained carpet none of which were essential value to the State's case.

The West Virginia Supreme Court of Appeals refused his Petition by Order entered on February 1,

1995. (Id.)

On July 2, 2001, Petitioner filed a Petition for Writ of Habeas Corpus in the Circuit Court

of Raleigh County. Goedeke v. Painter, Civil Action No. 01-C-561-H. Petitioner raised the

following six grounds for *habeas* relief (Id., Exhibit 5.):

1. The Petitioner was clearly denied effective assistance of counsel during his trial and appeal.  Petitioner's trial counsel unprepared for trial.  He failed to investigate leads, witnesses, and lab reports.  This is contrary to an unreasonable application of clearly established United States precedent setting law, and violated the Petitioner's right under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and violate Article III, Section 10, and 14 of the West Virginia Constitution;

2. Petitioner's rights to a fair trial was violated by the court admitted eleven gruesome photographs of the crime scene, a bloody laundry basket and blood stained carpet that were not of essential value to the state's case.  This is contrary to an unreasonable application of clearly established united States, precedent setting law, and violate the Petitioner's right under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and violate Article III, Section 10, and 14 of the West Virginia Constitution;

---

for parole prior to having served a minimum of ten years of his or her sentence or the maximum period required by the provisions of [§ 61-12-13], whichever is greater."

3.      Petitioner's right to a fair trial was violated by the court in repeatedly
permitting the prosecuting attorney knowingly used perjury testimony,
allowing the prosecuting attorney to inflaming the jury with prejudice and
passion and stating as facts that was into evidence, further allowing the
prosecuting to shift the burden of proof to Petitioner.  The acts of the
prosecuting attorney denied Petitioner his clear right to a fair trial.
Prosecution repeatedly states as facts testimony that was not into evidence.
This is contrary to an unreasonable application of clearly established United
States, precedent setting law, and violated the Petitioner's right under the
First, Fifth, Sixth and Fourteenth Amendments to the United States
Constitution and violate Article III, Section 10, and 14 of the West Virginia
Constitution;

4.      Petitioner's rights to a fair trial was violated by the jurors reading newspaper
during trial this is contrary to an unreasonable application of clearly
established United States, precedent setting law, and violate the Petitioner's
right under the First, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution and violate Article III, Section 10, and 14 of the West
Virginia Constitution;

5.      Petitioner's right to a fair trial was violated by the trial did not compel
Dr. Whelan to testify or give report and did not allow alternative evaluation
of defendant contrary to an unreasonable application of clearly established
United States, precedent setting law, and violated the Petitioner's right under
the First, Fifth, Sixth, and Fourteenth amendments to the United States
Constitution and violate Article III, Section 10, and 14 of West Virginia
Constitution;

6.      Petitioner's right to a fair trial was violated by the trial judge when the
Petitioner was forced to trial while the Petitioner was not mentally
competent.  This is contrary to an unreasonable application of clearly
established United States, precedent setting law, and violated the Petitioner's
right under the First, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution and violate Article III, Section 10 and 14 of West
Virginia Constitution.

The Circuit Court appointed counsel, and on November 8, 2002, Petitioner, by counsel, filed a <u>Losh</u>

checklist[3] and an Amended Petition, alleging the following grounds for relief (<u>Id.</u>, Exhibit 6.):

---

[3] In *Losh v. McKenzie*, 166 W.Va. 762, 768 - 770, 277 S.E.2d 606, 610 - 611 (1981), the
West Virginia Supreme Court of Appeals stated that "[o]nce a circuit court grants a pro se habeas
corpus petition and appoints counsel for the petitioner, both counsel and the petitioner must raise

3

1.      Petitioner was denied his right to a fair trial because of prejudicial pretrial publicity. The homicide which Petitioner was convicted of committing received a substantial amount of media attention and various articles concerning this matter appeared in the local newspaper before, and during, the trial of this matter.

2.      Petitioner asserts that he was mentally incompetent at the time of the offense. The offense occurred on June 7, 1993. In March of 1993, Petitioner was hospitalized for 14 days after a drug overdose and an attempted suicide. In April of 1993, Petitioner was released from the hospital after a wrong diagnosis was made, and Petitioner was given improper medications based upon the wrong diagnosis. The testimony of Dr. Joseph Whelan and Dr. David White will be necessary to prove this assertion.

3.      Petitioner was incapacitated at the time of trial due to drug use. Petitioner was on Buspar . . ., Desaril, and Xanax. The testimony of Dr. David White is necessary to support this assertion.

4.      Petitioner unintelligently waived his right to counsel, based upon Petitioner's drug use. When Petitioner was questioned by the State Police, Petitioner had taken more Buspar and Xanax than prescribed and recommended, and Petitioner waived his right to have counsel appointed and present during questioning at the time of his overmedication.

5.      Petitioner's confession was coerced, due to his overmedicated condition and the State Police informing Petitioner that if he would confess, the troopers would help him and a confession would make the situation easier for the Petitioner. Additionally, the police subjected Petitioner to prolonged and excessive questioning. Discovery of the State Police notes and records concerning the questioning and investigation of this incident is required for documentary support of this assertion.

6.      Petitioner was a victim of ineffective assistance of counsel, based on the following:

---

all issues which are known to them or which, with reasonable diligence, would become known to them. That is a reasonable rule of procedure since the universe of all grounds for successful collateral attack on underlying convictions is comparatively small." The *Losh* Court listed fifty-three of the most frequently raised grounds. With some exceptions, grounds not raised are waived. *See Nagye v. Seifert*, 2005 WL 2405946, *4 (S.D.W.Va.)(Faber, C.J.);   *Markley v. Coleman*, 215 W.Va. 729, 732 - 733, 601 S.E.2d 49, 52 - 53 (2004).

4

a.      Petitioner's trial counsel did not seek a change of venue;

b.      Petitioner's trial counsel did not request the trial judge to recuse himself based upon the trial judge's secretary was married to the victim's first husband, Jack Pate, and daughter Elissa Redden;

c.      Petitioner's trial counsel failed to properly apply defenses based upon Petitioner's mental state at the time of trial and at the time of the offense, including the failure of Petitioner's trial counsel to vigorously object to the Trial Court allowing a subpoenaed witness, Dr. Joseph Whelan, to failure to appear, and allow the trial to proceed without the testimony of said witness;

d.      Petitioner's trial counsel failed to properly investigate Petitioner's defenses and witnesses;

e.      Petitioner's trial counsel was overmatched by the State's prosecutor of this case;

f.      Petitioner's trial counsel failed to fully inform and educate Petitioner as to the ramifications of the State's plea bargain offer, namely, Petitioner's trial counsel failed to inform Petitioner that the State's plea offer, a forty-year determinate sentence, would have resulted in Petitioner being eligible for release after ten to twelve years. Petitioner was given the impression that the State's plea offer of forty years meant Petitioner would be incarcerated for forty years;

g.      Petitioner's trial counsel failed to obtain a speedy trial for Petitioner;

h.      Petitioner's trial counsel failed to seek a separate pretrial motion hearing prior to the jury being selected on June 7, 1994;

i.      Petitioner's trial counsel made misrepresentations to the trial court concerning Petitioner's decisions about the plea offer, failing to disclose to the trial court that trial counsel had given Petitioner bad advice concerning the offer;

j.      Petitioner's trial counsel failed to present evidence to the jury concerning the victim's delicate health, i.e., the victim suffered from cystic fibrosis, etc. - which rendered victim susceptible to death from less-than-normally-fatal forces;

k.      Petitioner's trial counsel instructed Petitioner to remain silent at sentencing.

5

Petitioner's own testimony and a close review of the trial record are necessary for these assertions to be proved.

7.     Petitioner received ineffective assistance from his appellate counsel because the issues for appeal identified in the notice of appeal were not completely presented in Petitioner's petition for appeal.

8.     Petitioner was denied a fair trial and his right to remain silent was violated because Petitioner was detained and questioned by a State Trooper without proper warnings being given to Petitioner. Petitioner's own testimony is necessary for this assertion to be proven.

9.     Petitioner's right to a fair trial and his due process rights were violated because Petitioner was never provided a copy of the Grand Jury Minutes.

10.    Petitioner was denied a fair trial because of his subpoenaed witness, Dr. Joseph Whelan, failed to appear, and the trial court allowed the trial to continue without a capias being issued or without allowing Petitioner to find another expert capable of addressing the same issues Dr. Whelan would have addressed.

11.    Petitioner was denied a fair trail because the trial court improperly allowed gruesome photographs to come into evidence, thus prejudicing the jury.

12.    Petitioner was denied a fair trial because of prejudicial statements made by the prosecutor including improperly interchanging "premeditation" with "intent," and in giving a Christmas present to the trial judge in open court before the pretrial hearing, which said exchange was observed by witnesses for the trial.

13.    Petitioner's conviction was based upon insufficient evidence of first degree homicide.

14.    The prosecutor improperly communicated with a witness, the State's medical examiner, by shaking the witness' hand and thanking him for his testimony. Said exchange prejudiced the jury's view of said witnesses' testimony, improperly suggesting that the testimony supported the State's theory of the offense versus the Petitioner's theory.

Upon examining the record, the Circuit Court determined that "Petitioner may have suffered a due

process violation and now must undergo a psychiatric evaluation in order to assess that possibility

and consider the remaining claims stated in the petition." (Id., Exhibit 7.) Thus, by Orders entered

on December 17, 2002, and January 24, 2003, the Circuit Court required Petitioner to undergo a

competency and criminal responsibility evaluation. (Id.) On April 3, 2003, Petitioner filed a Motion

for Leave of Court to Conduct Discovery including Requests for Production in the State *habeas*

proceedings. (Id., Exhibit 9.) On October 28, 2003, Petitioner filed a Motion to Withdraw his

allegations of incompetency at the time of the offense and at trial in view of a psychiatric evaluation

finding no incompetency. (Id., Exhibit 8.) The State *habeas* Court did not hold an evidentiary

hearing upon Petitioner's claims. Rather, by Order entered January 30, 2004, the Circuit Court

denied Petitioner's *habeas* Petition. (Id., Exhibit 10.)

Petitioner filed a Petition for review of the Circuit Court's denial of his *habeas* Petition in

the West Virginia Supreme Court of Appeals on August 2, 2004. (Id., Exhibit 11.) Petitioner raised

the following eight issues (Id.):

1.  The Trial Court improperly applied Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia.

2.  The Trial Court erred in summarily dismissing Petitioner's assertion that Petitioner was denied a fair trial because a subpoenaed witness for Petitioner failed to appear and the Trial Court continued the trial without the issuance of a capias or a continuance because the Trial Court found the issue moot because the Petitioner withdrew the issue of competency.

3.  The Trial Court erred in dismissing Petitioner's assertion of ineffective assistance of counsel based upon a failure to explain a plea bargain offer made by the State.

4.  The Trial Court improperly denied Petitioner an opportunity to conduct discovery.

5.  The Trial Court misapplied the law when the Trial Court refused to examine the claims of ineffective assistance of counsel based upon a conclusion of law that a Trial Court should not examine strategy and/or tactical decisions.

6.     The Trial Court erred in summarily dismissing Petitioner's issue of unintelligent waiver of counsel due to the use of drugs.

7.     The Trial Court erred in summarily dismissing the allegation of ineffective assistance of counsel based upon Petitioner's trial counsel's failure to properly address defenses of mental state, including the defense of diminished capacity.

8.     The Trial Court erred in summarily dismissing Petitioner's assertion of ineffective assistance of counsel based upon a failure of Petitioner's trial counsel to inform the jury about the victim's delicate health.

The West Virginia Supreme Court of Appeals denied his Petition by Order entered October 21, 2004. Goedeke v. Painter, No. 041386 (W.Va. Oct. 21, 2004). (Id., Exhibit 11.)

On July 12, 2005, Petitioner, acting *pro se*, filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody in this District Court. (Document No. 1.) Petitioner alleges the following grounds for *habeas* relief:

Ground One

Petitioner contends that he was denied his rights to effective assistance of counsel in direct violation of the Sixth Amendment to the United States Constitution and under Article III, Section 14 of the West Virginia Constitution.

1.     The Trial Court erred in summarily dismissing Petitioner's assertion that Petitioner was denied a fair trial because a subpoenaed witness for Petitioner failed to appear and the Trial Court continued the trial without the issuance or a continuance because the Trial Court found the issue moot because Petitioner withdrew the issue of competency.

2.     The Trial Court erred in dismissing Petitioner's assertion of effective assistance of counsel based upon a failure to properly explain a plea bargain offer made by the State.

3.     The Trial Court misapplied the law when the Trial Court refused to examine the claims of ineffective assistance of counsel based upon a conclusion of law that a Trial Court should not examine strategy and/or tactical decisions.

4.     The Trial Court erred in summarily dismissing Petitioner's issue of unintelligent waiver of counsel due to the use of drugs.

8

5.      The Trial Court erred in summarily dismissing the allegation of ineffective assistance of counsel based upon Petitioner's trial counsel's failure to properly address [the defense] of mental state, including the defense of diminished capacity.

6.      The Trial Court erred in summarily dismissing Petitioner's assertion of ineffective assistance of counsel based upon a failure of Petitioner's trial counsel to inform the jury about the victim's delicate health condition.[4]

7.      a.      Petitioner's trial counsel did not seek a change of venue;

            b.      Petitioner's trial counsel did not request the trial judge to recuse himself based upon the trial judge's secretary was married to the victim's first husband, Jack Pate, and daughter, Elissa Redden.

            c.      Petitioner's trial counsel failed to properly apply defenses based upon Petitioner's mental state at the time of trial and at the time of the offense, including the failure of Petitioner's trial counsel to vigorously object to the trial court allowing a subpoenaed witness, Dr. Joseph Whalen, to fail to appear, and allow the trial to proceed without the testimony of said witness.

            d.      Petitioner's trial counsel failed to properly investigate Petitioner's defenses and witnesses.

            e.      Petitioner's trial counsel was overmatched by the State's prosecutor of this case.

            f.      Petitioner's trial counsel failed to fully inform and educate Petitioner as to the ramifications of the State's plea bargain offer, namely Petitioner's trial counsel failed to inform Petitioner that the State's plea offer, a forty-year determinate sentence, would have resulted in Petitioner being eligible for release after ten to twelve years. Petitioner was given the impression that the State's plea offer of forty years meant Petitioner would be incarcerated for forty years.

            g.      Petitioner's trial counsel failed to obtain a speedy trial for Petitioner.

            h.      Petitioner's trial counsel failed to seek a separate pretrial motion hearing prior to the jury being selected on June 7, 2004.

            i.      Petitioner's trial counsel made misrepresentations to the trial court concerning Petitioner's decision about the plea offer, failing to disclose to the trial court that trial counsel had given Petitioner bad advice concerning the plea offer.

            j.      Petitioner's trial counsel failed to present evidence to the jury

---

[4] Petitioner raised the issues presented in Ground One parts 1 through 6 in seeking review of the Circuit Court's denial of his Petition for *habeas* relief in the West Virginia Supreme Court of Appeals in July, 2004. *See* Document No. 35, Exhibit 11.

9

concerning the victim's delicate health, i.e. the victim suffered from cystic fibrosis, etc., which rendered victim susceptible to death from less-than-normally-fatal forces.

k.      Petitioner's trial counsel instructed Petitioner to remain silent at sentencing.[5]

Ground Two

The State's failure to disclose during pre-trial discovery certain evidence that was favorable to the Petitioner denied him his basic Fourteenth Amendment [right] to a fair trial.[6]

Ground Three

Petitioner's rights to a fair trial [were] violated by the Court in repeatedly permitting the prosecuting attorney [to] knowingly use perjur[ed] testimony, allowing the prosecuting attorney to inflam[e] the jury with prejudice and passion and stating as facts that was not into evidence, further allowing the prosecuting to shift the burden of proof to Petitioner. The acts of the prosecuting attorney denied Petitioner his clear right to a fair trial. Prosecutor repeatedly stated as facts testimony that was not into evidence. This is . . . an unreasonable application clearly established United States, precedent setting law, and violated the Petitioner's right under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and violate Article III, Section 10 of West Virginia Constitution.

Ground Four

Petitioner's rights to a fair trial was violated by the jurors reading newspaper during trial. This is . . . an unreasonable application of clearly established United States,

---

[5] Petitioner did not raise the issues set forth in Ground One, part 7, subparts a, b, d, e, g, h, i and k in his direct appeal of his conviction and sentence or his appeal of the Circuit Court's denial of *habeas* relief to the West Virginia Supreme Court of Appeals. As will be discussed *infra*, because Petitioner did not raise these issues in West Virginia's highest Court on either direct or collateral review, they are not properly before the District Court in the matter *sub judice*. Reading Petitioner's Petition in this case liberally as the Court must, the undersigned finds that (1) Ground One, part 7, subparts c is related to Ground One, parts 1 and 5; (2) Ground One part 7, subpart f is related to Ground One, part 2; and (3) Ground One, part 7, subpart j is related to Ground One, part 6.

[6] Petitioner claims that the Circuit Court erred in refusing to allow him to engage in discovery in his *habeas* proceedings. Petitioner raised this issue in appealing the Circuit Court's denial of his Petition for *habeas* relief to the West Virginia Supreme Court of Appeals. (Document No. 35, Exhibit 11, Petitioner's Petition, pp. 18 - 20.)

precedent setting law, and violated the Petitioner's right[s] under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and violate Article III, Section 10, and 14 of West Virginia Constitution.

Ground Five

Petitioner's right to a fair trial was violated by the trial judge did not compel Dr. Whelan to testify or give report and did not allow alternative evaluation of Defendant contrary to an unreasonable application of clearly established United States, precedent setting law, and violated the Petitioner's right under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and violate[d] Article III, Section 10, and 14 of West Virginia Constitution.

Ground Six

Petitioner's rights to a fair trial [were] violated by the trial judge when the Petitioner was forced to trial while the Petitioner was not mentally competent. This is . . . an unreasonable application of clearly established United States, precedent setting law, and violated the Petitioner's right[s] under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and violate[d] Article III, Section 10, and 14 of West Virginia Constitution.

Ground Seven

Petitioner['s] confession was coerced, due to his overmedicated condition and the State Police informing Petitioner that if he would confess, the troopers would help him and a confession would make the situation easier for Petitioner.[7]

Ground Eight

Petitioner was denied a fair trial and his right to remain silent was violated because Petitioner was detained and questioned by a State Trooper without proper warnings being given to Petitioner. Petitioner's right to a fair trial and his due process rights were violated because Petitioner was never provided a copy of the Grand Jury Minutes.

Ground Nine

---

[7] Petitioner asserted error in appealing the Circuit Court's denial of *habeas* relief in the Circuit Court's rejection of his claim that he was rendered incompetent by drug use and his mental impairment at the time he gave a statement to State Police and so made an "unintelligent waiver of counsel." (Document No. 35, Exhibit 11, pp. 23 - 24.) The undersigned therefore finds that the issues presented in Grounds Five, Six and Seven are properly before the District Court.

Petitioner was denied a fair trial because one of his subpoenaed witnesses, Dr. Joseph Whelan, failed to appear, and the trial court allowed the trial to continue without a capias being issued or without allowing Petitioner to find another expert capable of addressing the same issue Dr. Whelan would have addressed.

Ground Ten

Petitioner was denied a fair trial because the trial court improperly allowed gruesome photographs to come into evidence, thus prejudicing the jury.

Ground Eleven

Petitioner's rights to a fair trial [were] violated by the court [when it] admitted eleven gruesome photograph[s] of the crime scene, a bloody laundry basket and blood stained carpet that were not of essential value to the State's case. This is . . . an unreasonable application of clearly established United States, precedent setting law, and violated the Petitioner's right[s] under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and violate[d] Article III, Section 10, and 14 of West Virginia Constitution.[8]

Ground Twelve

Petitioner's conviction is based upon insufficient evidence of first degree homicide.

Ground Thirteen

The prosecutor improperly communicated with a witness, the State's medical examiner, by shaking the witness's hand and thanking him for his testimony. Said exchange prejudiced the jury's view of said witness's testimony, improperly suggesting that the testimony supported the State's theory of the offense versus Petitioner's theory. (Id.)[9]

On November 22, 2005, the undersigned filed Proposed Findings and Recommendation finding that Petitioner filed his Petition beyond the 28 U.S.C. § 2244(d)(1) one-year statute of

---

[8] Petitioner presented the issues contained in Grounds Ten and Eleven in his direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals.

[9] The undersigned finds that the issues contained in Grounds Three, Four, Eight, Twelve and Thirteen were not raised in West Virginia's highest Court on either direct or collateral review and are therefore not properly before the District Court in this matter.

limitation and no grounds existed for equitable tolling and recommending that his Petition be dismissed. (Document No. 4.) Petitioner filed a Reply in Opposition on January 13, 2006 (Document No. 7.), and in view of issues which Petitioner raised in his Reply, the District Court rejected the undersigned's Proposed Findings and Recommendation by Memorandum Opinion and Order filed on January 20, 2006 (Document No. 8.) The District Court appointed counsel to represent Petitioner (Document No. 10.),  held an evidentiary hearing on March 28, 2006 (Document No. 19.), and set a schedule for the briefing of the issues. (Document No. 20.) Having the parties' briefs, the District Court filed a Memorandum Opinion and Order on July 13, 2006, finding that Petitioner's Petition was filed timely and remanding the matter to the undersigned "for issuance of proposed findings and recommendation regarding the merits of Mr. Goedeke's habeas petition." (Document No. 26.)[10] On July 14, 2007, the undersigned issued an Order to Show Cause requiring Respondent to file an answer to Petitioner's Petition. (Document No. 27.)

On October 16, 2006, Respondent filed a Response to Petitioner's Petition (Document No. 34.), a Motion to Dismiss (Document No. 33.), a Motion for Summary Judgment (Document 35.) and a Memorandum in Support (Document No. 36.). Respondent asserts that Petitioner's ground one, parts 1 though 6, and ground two (post-conviction discovery) must be dismissed because Petitioner claims error in his State *habeas* proceedings and error in State *habeas* proceedings is not cognizable as a basis for *habeas* relief in the District Court. (Id., p. 30.)[11] Respondent then contends

---

[10] The District Court's Memorandum Opinion and Order is published. *Goedeke v. McBride*, 437 F.Supp.2d 590 (S.D.W.Va. 2006)

[11] Respondent addresses all of the issues which Petitioner has raised herein. The undersigned, however, summarizes Respondent's position only with respect to the issues which the undersigned hereafter finds are fully exhausted and properly before the District Court.

13

that Petitioner's Ground One, part 7, subparts a through e, g, h and k and Grounds three, four, eight and ten through thirteen are procedurally defaulted and not properly before the District Court because he did not raise the issues therein in seeking review in the West Virginia Supreme Court of Appeals. (Id., p. 34.) Respondent further addresses Petitioner's claims of ineffective assistance of counsel. (Id., pp. 34 - 48.) Respecting Petitioner's claims that his trial attorney failed to present a defense based upon his mental condition at the time of the offense and at the time of trial and the Circuit Court proceeded on to trial without having the subpoenaed testimony of Dr. Whelan, Respondent points out that Petitioner raised a defense on these bases prior to trial, withdrew it on the day of trial, requested a competency evaluation after the State concluded its evidence, raised it again in *habeas* proceedings and again withdrew it after an unfavorable psychiatric evaluation.(Id., pp. 37 - 43.) Respecting Petitioner's claim of ineffective representation in apprising him of the ramifications of a plea offer, Respondent states that Petitioner "claims that defense counsel did not tell him when he would be eligible for parole or that he was entitled to day for day credit. The Petitioner, an inveterate liar, has not provided a scrap of corroborating evidence supporting this self-serving statement." Respondent further argues that defense counsel is not constitutionally required to advise a defendant of parole eligibility, a collateral consequence of a guilty plea. Finally, Respondent asserts that Petitioner's claim fails because he does not allege that he would have accepted the plea offer if his attorney informed him of his eligibility for parole. (Id., pp. 45 - 46.) Respecting Petitioner's claim that his trial attorney was ineffective in failing to inform the Jury of Ms. Stewart's delicate health, it is evident that Respondent's counsel has misunderstood Petitioner's claim thinking that Petitioner is claiming that he was of delicate health. (Id., pp. 47 - 48.) Respecting Petitioner's claim that due to drug use, his waiver of his rights prior to giving a statement to the

14

police on June 16, 1993, was "unintelligent", Respondent states that it is not evident that Petitioner

was under the influence of drugs when he gave his statement, Petitioner was not taken into custody

until after he gave his statement and Petitioner withdrew his objection to the admission of the

statement during a pre-trial conference. (Id., pp. 52 - 53.) Respecting Petitioner's claim that the Trial

Court erred in allowing the admission of gruesome photographs in evidence, Respondent asserts that

the issue is a matter of State evidentiary law not cognizable in these Section 2254 proceedings. (Id.,

pp. 53 - 55.)

On December 12, 2006, Petitioner, by counsel, filed a Brief in Reply to Respondent's

Motions and an Affidavit in Support. (Document No. 39.) Petitioner reasserts that he "received

ineffective assistance of counsel during the plea bargaining process such as to deprive him of his

constitutionally guaranteed right to counsel." Petitioner states in his Affidavit as follows:

> 4.    At the time following the indictment but prior to the commencement of the
>       trial in this matter, Mr. McGraw represented to me that the State of West
>       Virginia, through Assistant Prosecutor Kristen Keller, was offering me a plea
>       bargain to resolve the charge of first degree murder.
> 5.    Mr. McGraw explained to me that, under the terms of the plea bargain, I
>       would plead guilty to one charge of murder in the first degree and would
>       receive a prison sentence of '40 years flat.'
> 6.    Mr. McGraw did not explain to me at that time that a sentence of '40 years
>       flat' meant a chance of being released, with good behavior, in 20 years.
>                                    * * *
> 11.   Had I known at the time that a sentence of '40 years flat' meant I could be
>       released in 20 years, with good behavior, I would have accepted the State's
>       offer rather than risking the possibility of a life sentence at a trial.

## STANDARDS OF REVIEW

Federal *habeas* relief is available to a state prisoner under 28 U.S.C. § 2254, only if the

prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a); see also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d)

15

provides that when the issues raised in a § 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. In determining whether the State Court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent, all factual determinations by the State Court are entitled to a presumption of correctness with the burden placed on Petitioner to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[12]

---

[12] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

When a State Court fails to address an issue, or fails to articulate a rationale behind its ruling, the federal courts "must independently review the record and the applicable law; however, the review is not a de novo review." See Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000), cert denied sub nom., 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). Rather, it is a deferential review to determine if the State Court's decision is legally and factually reasonable. Id. The West Virginia Supreme Court of Appeals summarily refused Petitioner's direct appeal and request for review of the Circuit Court's denial of *habeas* relief. The United States Court of Appeals for the Fourth Circuit has consistently held that "a summary state court decision on the merits of a federal constitutional claim is an 'adjudication' of the claim for purposes of § 2254(d)." Bell v. Jarvis, 236 F.3d at 163. Beginning with Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998), and continuing with Weeks v. Angelone, 176 F.3d 249, 257 (4th Cir. 1999), aff'd, 528 U.S. 225, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000), Baker v. Corcoran, 220 F.3d 276, 291 n.14 (4th Cir. 2000), cert. denied, 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 110 (2001), Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000), cert. denied, 532 U.S. 950, 121 S.Ct. 1420, 149 L.Ed.2d 360 (2001), and concluding with Bell v. Jarvis, the Fourth Circuit has ruled, in a variety of procedural contexts, that federal Courts are limited to a deferential review of State Court decisions.

---

    (A) the claim relies on –
        (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Based upon <u>Bell v. Jarvis</u>, the undersigned finds that the appropriate standard of review respecting the claims which Petitioner raises in this case (provided they were presented at every level of direct and *habeas* review in West Virginia Courts) is an independent, but deferential, review of the record and the applicable law to determine whether the West Virginia Courts' decisions about which he complains herein were contrary to clearly established federal law or factually unreasonable.

**Summary Judgment.**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322 - 23, 106 S.Ct. at 2552 - 53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

## DISCUSSION

### A.      Procedural Default/Failure to Exhaust.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, state prisoners must exhaust available State remedies prior to filing a § 2254 petition in federal Court. 28 U.S.C. § 2254(b)(1)(A); *see also*, McDaniel v. Holland, 631 F.Supp. 1544, 1545 (S.D.W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in State Court, or (2) the Petitioner's claims will be deemed exhausted if no State remedies are currently available. *See* Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate State Courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles'' must be presented to the state court." Id. (*quoting* Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (*quoting* Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the State's highest Court on either direct or collateral review. See O'Sullivan, 526 U.S. at 844, 119 S.Ct. at 1732.

Section 2254(b)(1)(B) provides, however, that a federal petition need not be dismissed for failure to exhaust if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(I) and (ii). An "absence of available State corrective process" is created, in one instance, when the State Courts would refuse to review a petitioner's claims based on the petitioner's failure to comply with state procedural rules. See e.g., Mason v. Procunier, 748 F.2d 852 (4th Cir. 1984), cert. denied sub nom., Mason v. Sielaff, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). Under such circumstances, the petitioner's claims will be considered exhausted if the State procedural rule is adequate and independent. A State procedural rule is adequate "only if it is a 'firmly established and regularly followed state practice.'" Keel v. French, 162 F.3d 263, 268 (4th Cir. 1998), cert. denied, 527 U.S. 1011, 119 S.Ct. 2353, 144 L.Ed.2d 249 (1999)(internal citations omitted). The Fourth Circuit has held that unambiguous State statutes and Court rules are always firmly established. See Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir. 1999), aff'd, 528 U.S. 225, 125 S.Ct. 727, 145 L.Ed.2d 727 (2000). A State procedural rule is independent if "it does not 'depend on a federal constitutional ruling.'" Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000), cert. denied, 530 U.S. 1283, 120 S.Ct. 2761, 147 L.Ed.2d 1022 (2001)(quoting Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). Procedurally defaulted claims are considered exhausted for federal habeas purposes.

Claims that have been procedurally defaulted will not receive federal habeas review, however, unless the petitioner can establish either "cause and prejudice" for the default, or actual innocence. See Thomas v. Davis, 192 F.3d 445, 450 n.2 (4th Cir. 1999); Mueller v. Angelone, 181 F.3d 557, 584 (4th Cir.), cert. denied, 527 U.S. 1065, 120 S.Ct. 37, 144 L.Ed.2d 839 (1999). Cause

is established when an objective factor external to the petitioner's actions impeded the ability to comply with the State's procedural rule. See Strickler v. Greene, 527 U.S. 263, 283 n.24, 119 S.Ct. 1936, 1949 n.24, 144 L.Ed.2d 286 (1999). The petitioner, however, must exhibit reasonable diligence to establish cause.  See Hoke v. Netherland, 92 F.3d 1350, 1354 n.1 (4th Cir.), cert. denied, 519 U.S. 1048, 117 S.Ct. 630, 136 L.Ed.2d 548 (1996). Prejudice must be actual; the petitioner must show that the trial was infected with actual constitutional error which worked to his disadvantage. See McCarver v. Lee, 221 F.3d 583, 592 (4th Cir. 2000), cert. denied, 531 U.S. 1089, 121 S.Ct. 809, 148 L.Ed.2d 694 (2001); Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000).

Claims of ineffective assistance of counsel can be procedurally defaulted in the Section 2254 context. Bradshaw v. Richey, 546 U.S. 74, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005)(Sixth Circuit Court of Appeals improperly adjudicated Strickland claim by relying on evidence that was not properly presented to State *habeas* Courts.); Williams v. Allen, 458 F.3d 1233 (11th Cir. 2006); Hayes v. Battaglia, 403 F.3d 935 (7th Cir. 2005); Sweet v. Bennett, 353 F.3d 135 (2nd Cir. 2003). Furthermore, it is well established in this jurisdiction that "unless with prejudice, summary dismissals of habeas petitions invoking the original jurisdiction of the West Virginia Supreme Court will not satisfy exhaustion requirements." Moore v. Kirby, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); *see also*, McDaniel v. Holland, 631 F.Supp. at 1546.

Petitioner did not raise the issues set forth in Ground One, part 7 (ineffective assistance of counsel), subparts a (failure to seek change of venue), b (failure to move to recuse Trial Judge), d (failure to investigate), e (trial counsel overmatched), g (failure to obtain speedy trial), h (failure to request separate pretrial motion hearing), i (failure to inform Trial Court of misrepresentations and

bad advice respecting plea agreement) and k (instructing Petitioner to remain silent at sentencing) in his direct appeal of his conviction and sentence or his appeal of the Circuit Court's denial of *habeas* relief to the West Virginia Supreme Court of Appeals. Because Petitioner did not raise these issues in West Virginia's highest Court on either direct or collateral review, they are not properly before the District Court in the matter *sub judice*. The undersigned further finds that Petitioner did not raise the issues stated in Grounds Three (Trial Court's allowance of inflammatory remarks of prosecuting attorney), Four (Jury's exposure to news reports respecting Petitioner's trial), Eight (Petitioner was improperly detained and questioned by State Police and not provided Grand Jury Minutes), Twelve (the evidence was insufficient to convict Petitioner) and Thirteen (Prosecutor's improper communication (shaking hands) with State Medical Examiner) in seeking either direct or collateral review in the West Virginia Supreme Court of Appeals. Petitioner has not indicated, nor does the record suggest, any circumstance which hindered or impeded him from raising the aforesaid issues. Petitioner was represented and his requests for review of his conviction and sentence and the Circuit Court's denial of his Petition for *habeas* relief were submitted by counsel. The aforesaid matters must therefore be deemed procedurally defaulted or unexhausted and not properly before the District Court in this matter.

Having examined the issues which Petitioner raises herein and having determined that he presented some but not all of them in petitioning the West Virginia Supreme Court of Appeals for review such that some but not all of the issues presented herein are procedurally defaulted or unexhausted, the undersigned further finds that Petitioner's remaining claims are cumulative and reformulates the issues for consideration in these Section 2254 proceedings as follows:

Whether in violation of the United States Constitution –

1.  The Trial Court erred in proceeding to trial when Petitioner was mentally incompetent and had not had a competency evaluation and Dr. Whelan failed to appear and testify at pre-trial hearings.

2.  The Trial Court erred in admitting gruesome photographs.

3.  Petitioner's trial attorney provided ineffective representation –

    a.  In failing to explain a plea offer.
    b.  In failing to object to proceeding to trial when Dr. Whelan failed to appear and failing to advance Petitioner's mental state and diminished capacity at the time of the offense and the time of trial as a defense.
    c.  In failing to inform the jury about Ms. Stewart's delicate health.

4.  The *habeas* Court erred –

    a.  in refusing to allow discovery.

    b.  in rejecting Petitioner's claim of unintelligent waiver of his right to counsel in giving a statement to the State Police by virtue of his drug use.

## B.   The Merits of Petitioner's Remaining Claims.

### 1.   Petitioner's Mental Competency/Dr. Whelan's Testimony.

Petitioner's mental condition and treatment were a subject of discussion at his bond hearing on June 18, 2003. Petitioner's wife testified that Petitioner was treated by Dr. Whelan and Dr. Friedman for his psychological problems including post-traumatic stress disorder, major depression and suicidal tendencies. (Document No. 35, Exhibit 16, transcript of June 18, 2003, bond hearing, pp. 5 - 6.)[13] Petitioner's attorney stated that "the fact that he has some history of being cared

---

[13] The record contains documents pertaining to Petitioner's hospitalization and treatment at Appalachian Regional Hospital for a drug overdose in March and April, 1993, including a Discharge Summary and Consultation Note of Dr. Whalen indicating his diagnoses of major affective disorder

for by a doctor because of possible suicide and major depression certainly is not a reason to keep

him in a jail, in fact that would be another reason to allow him to receive bond and have a bond set

so that he can get the type of care he needs." (Id., p. 18.) At the conclusion of the hearing, the Court

invited Petitioner's attorney to submit medical records. (Id., p. 19.) On October 4, 1993, Petitioner

filed a Motion for Psychological and Psychiatric Evaluation to Determine Competency to Stand

Trial and Criminal Responsibility (Id., Exhibit 13.) On October 8, 1993, the Court considered

Petitioner's  Motion for Psychological and Psychiatric Evaluation to Determine Competency and

Responsibility. (Id., Exhibit 16, transcript of October 8, 2003, hearing.)[14] Apparently, the Court

entered an Order that Petitioner be taken to Dr. Whelan for a psychiatric evaluation. At a hearing

on December 7, 1993, Petitioner's attorney informed the Court that correctional officers transported

Petitioner to Dr. Whelan's office. Petitioner's attorney advised that a correctional officer stayed with

Petitioner while he was examined by a psychologist. The correctional officer then waited close by

while Petitioner met with Dr. Whelan. Petitioner's attorney stated that the correctional officer's

presence made Petitioner uncomfortable. Petitioner's attorney also stated that Dr. Whelan did not

think that he should conduct the psychiatric evaluation because he had treated Petitioner for a drug

overdose some time earlier. (Id., transcript of December 7, 1993, hearing.) On December 15, 1993,

---

and "[a]dult situational reaction vs. possible major depression." (Exhibit 35, Exhibits 14 and 15.)

[14]     Respecting competency to stand trial, the Fourth Circuit Court of Appeals has recognized that "[c]ompetency claims can raise issues of both procedural and substantive due process." *Walton v. Angelone*, 321 F.3d 442, 459 (4th Cir. 2003). The *Walton* Court stated that "a defendant may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing  after the defendant's mental competency was put in issue. To prevail, the defendant must establish that the trial court ignored facts raising a 'bona fide doubt' regarding the defendant's competency to stand trial. * * * On the other hand, a defendant may make a substantive competency claim by alleging that he was, in fact tried and convicted while mentally incompetent." *Id.*

the Court told Petitioner's attorney to subpoena Dr. Whelan to a hearing the next day. (Id., transcript of December 15, 1993, hearing.) It appears that Petitioner's attorney did not obtain a subpoena for Dr. Whelan and the Court issued an Order requiring his attendance. On December 16, 2003, the Court heard the testimony of the correctional officer who had accompanied Petitioner to Dr. Whelan's office. The Court concluded by directing Petitioner's attorney again to subpoena Dr. Whelan and asked that the parties inform the Court of the status by the next morning. (Id., transcript of December 16, 2003, hearing.) The record contains no indication of any further Court proceedings until June, 1994, when trial commenced. On June 7, 1994, during an *in camera* hearing just prior to opening statements, the State called West Virginia State Trooper S. F. Van Meter to testify about his tape-recorded questioning of Petitioner about Ms. Stewart's murder on June 16, 2003, within a week after Ms. Stewart's murder. Trooper Van Meter testified that Petitioner "mentioned he was under prescription medicine, but he was feeling the best he's ever felt for awhile." (Document No. 35, Exhibit 17, pp. 57 - 58.)  Trooper Van Meter testified that upon his arrest, Petitioner asked him, "Do you think an insanity plea would help me?" (Id., p. 59.) Toward the end of the *in camera* hearing, Petitioner withdrew his claim of mental incompetency as follows (Id., Exhibit 18, p. 67.):

> MR. McGRAW: Your Honor, just for the purpose of the record, I want to say that Mr. Goedeke, in our consultations between himself and I and some of his family, that Mr. Goedeke advised me, as his attorney, that he did not want to pursue any kind of psychiatric defense after we initially went in that direction. And I just wanted to put that on the record. Its not really necessary, but – unless the Court would think so.
>
> THE COURT: Is that right; is that what you mean?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: We don't have a jury. Anything you say here to me will never get to a jury, no way. But you want to pursue defenses other than anything that has to do

with insanity or any related defense?

THE DEFENDANT: Yes, sir.

Petitioner's attorney again requested that the Court order that Petitioner have a psychiatric evaluation after the State rested, and th Court denied it. (Id., Exhibit 22, pp. 310 - 311.) The Trial Court stated that "[t]he Court has heard the evidence. It hasn't heard the defendant testify. He may or may not ever hear that. But after I've heard the tapes, in my opinion, the person who was speaking on that tape was as rational as I am." Petitioner then testified at trial that he and Ms. Stewart had a quarrel, Ms. Stewart became violent, and he defended himself having no intention of killing her, tied her up and put her in a closet. (Id., Exhibits 25 and 26, pp. 476 - 487.). Notably, Petitioner did not claim that his mental condition rendered him unable to appreciate the circumstances which culminated in his murder of Ms. Stewart. Moreover, in his direct appeal to the West Virginia Supreme Court of Appeals, Petitioner did not claim any error in the Trial Court respecting his Motion for Psychological and Psychiatric Evaluation to Determine Competency and Responsibility or the failure to obtain Dr. Whelan's testimony. Petitioner raised the issue of his mental competency again, however, in his *habeas* proceedings in the Circuit Court claiming, among other things, that his right to a fair trial was violated when "the Trial Judge did not compel Dr. Whelan to testify or give report and did not allow alternative evaluation" and "the Petitioner was forced to trial while the Petitioner was not mentally competent." (Id., Exhibit 5.) Petitioner's counsel stated substantially the same issues in his Amended *habeas* Petition. (Id., Exhibit 6.) The *habeas* Court proceeded cautiously based upon consideration of West Virginia law and ordered a competency evaluation. (Id., Document No. 7.) Petitioner was found to have been competent at the time of the offense and at the time of trial. Petitioner then withdrew his allegation of mental

26

incompetency at the time of the offense and at the time of trial. (Id., Exhibit 8.) In view of the results of the competency evaluation and Petitioner's withdrawal of the issue, the State *habeas* Court deemed his assertions respecting Dr. Whalen and his mental competency moot. (Id., Exhibit 10, p. 8, conclusion of law number 11.)

The undersigned finds nothing contrary to clearly established federal law or factually unreasonable about the State *habeas* Court's decision. While it is evident that Petitioner had serious mental problems about two months before he murdered Ms. Stewart and was being treated for them when he committed the offense, it was evident to the Trial Court from Petitioner's June 16, 2003, statement to the police that Petitioner comprehended the wrongfulness of his conduct at the time of the offense. It was further evident from Petitioner's discussion with the Court about his withdrawal of his mental competency defense and his testimony that Petitioner knowingly and intentionally withdrew his mental competency defense, fully understood the charges against him and participated meaningfully in the trial proceedings. His claim of error in these respects is without merit.

## 2. <u>The Trial Court's Evidentiary Rulings/Gruesome Photographs.</u>

To the extent that Petitioner challenges the State Court's evidentiary rulings, Respondent is entitled to summary judgment. Relief under 28 U.S.C. § 2254 is available to state prisoners in "custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Violations of state law and procedure that do not implicate specific federal constitutional provisions are not cognizable in *habeas* review. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States."); Fisher v. Angelone, 163 F.3d 835, 854 (4th Cir. 1998), cert. denied, 526 U.S. 1035,

119 S.Ct. 1290, 143 L.Ed.2d 382 (1999); Spencer v. Murray, 5 F.3d 758, 763 (4th Cir. 1993)("[A]

claims about the admissibility of evidence under state law rarely is a claim upon which federal

habeas corpus relief can be granted."). Generally, federal *habeas* relief is available with respect to

a trial court's evidentiary ruling only if the ruling denied the defendant the right to a fair trial. See

Abrams v. Barnett, 121 F.3d 1036, 1042 (7th Cir. 1997). When the challenged evidentiary rulings

"so infected the entire trial that the resulting conviction violates due process," it is presumed that

the defendant was denied a fair trial. Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38

L.Ed.2d 368 (1973); Bunch v. Thompson, 949 F.2d 1354, 1365 (4th Cir. 1991). The fact that the

admitted evidence allegedly was improper under State law, however, does not provide a basis for

*habeas* relief. "[T]he Due Process Clause does not permit the federal courts to engage in a finely

tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438,

n. 6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983). The proper inquiry for the Court is whether

the admission of the evidence itself so infected the entire trial that the resulting conviction violates

due process. See Estelle, 502 U.S. at 72, 112 S.Ct. at 482. See also  Goins v. Angelone, 52

F.Supp.2d 638, 667 (E.D.Va. 1999)(Photographs of victims deemed relevant and "not so

inflammatory as to render the proceedings constitutionally defective.")

Petitioner moved to suppress photographs of Ms. Stewart and the crime scene, and the Trial

Court considered Petitioner's motion in an *in camera* proceeding prior to opening statements.

(Document No. 35, Exhibit 17, pp. 40 - 42.) The State presented photographs of the crime scene and

Ms. Stewart through the testimony of West Virginia State Trooper Tilley who took them on June

9, 1993, when he and Trooper Zirkle discovered that Ms. Stewart had been murdered. (Id., Exhibit

19, pp. 139 - 148.) It appears that the State withheld introducing the most gruesome photographs and a videotape and modified a photograph to eliminate a gruesome aspect. The photographs were admitted into evidence over Petitioner's objection. (Id., p. 154.) Petitioner contended on direct appeal that it was error to admit the photographs, and the West Virginia Supreme Court of Appeals refused his appeal. Petitioner again raised the issue in his State *habeas* proceedings, and the State *habeas* Court relied upon the record in the Trial Court and the Supreme Court of Appeals in finding that Petitioner's claim in his *habeas* proceedings had no merit. (Id., Exhibit 10, conclusion of law number 12.) The undersigned finds that the admission of gruesome photographs in Petitioner's trial was not so egregious that it infringed upon specific constitutional protections. The undersigned further finds the State *habeas* Court's determination that Petitioner's claim in this regard had no merit reasonable. The undersigned finds therefore that Petitioner's claim in these Section 2254 proceedings that the Trial Court committed error in admitting gruesome photographs has no merit.

### 3.      Ineffective Assistance of Counsel.

The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a  presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. The Court will not

second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered.  Id. The Fourth Circuit Court of Appeals specifically recognizes that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), aff'd, 985 F.2d 553 (4th Cir.) cert. denied, 506 U.S. 1087, 113 S.Ct. 1069, 122 L.Ed.2d 372 (1993). Applying this standard, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel.

### a.    Failure to Explain a Plea Offer.

In seeking *habeas* relief in the Circuit Court of Raleigh County, Petitioner claimed that "Petitioner's trial counsel failed to inform and educate Petitioner as to the ramifications of the State's plea bargain offer, namely, Petitioner's trial counsel failed to inform Petitioner that the State's plea offer, a forty year determinate sentence, would have resulted in Petitioner being eligible for release after ten to twelve years. Petitioner was given the impression that the State's plea offer

of forty years meant Petitioner would be incarcerated for forty years[.]" (Document No 6, Amended Habeas Corpus Petition, p. 3.) The Circuit Court found no factual basis for this claim. (Document No. 10, p. 6.) In seeking the West Virginia Supreme Court of Appeals' review of the Circuit Court's denial of habeas relief, Petitioner contended that "[t]he Trial Court erred in dismissing Petitioner's assertion of ineffective assistance of counsel based upon a failure to explain a plea bargain offer made by the State." Petitioner argued that West Virginia law pronouncing that failure to inform a defendant of a plea offer amounts to ineffective assistance of counsel extends to failure to explain the sentencing ramifications of a plea offer. (Document No. 11, Petition, pp. 16 - 17.) Petitioner states this same claim herein submitting his Affidavit attached to his Reply to Respondent's Motions. (Document No. 39.) the undersigned finds nothing in the record indicating that Petitioner was actually offered a plea as he claims. Respondent asserts that Petitioner's claim fails both factually and legally. (Document No. 36, pp. 45 - 46.)

In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the United States Supreme Court considered Mr. Hill's allegation that his guilty plea was involuntary due to ineffective assistance of counsel because his attorney misinformed him respecting when he would become eligible for parole. The Supreme Court held "that the two-part Strickland v. Washington test applies to challenges to guilty pleas based upon ineffective assistance of counsel." Hill, 474 U.S. at 58, 106 S.Ct. at 370. The Supreme Court stated respecting the "prejudice" prong of that test that in addition to demonstrating that his trial attorney's performance was deficient, the petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370; See also United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992). The Hill Court stated that "[w]e

31

find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel because . . . we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of 'prejudice.' Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." Hill, 474 U.S. at 60, 106 S.Ct. at 371. The same standard applies when a petitioner contends that, were it not for his trial attorney's ineffectiveness, he would have accepted a plea offer and not proceeded  to trial.  See United States v. Merritt, 102 Fed.Appx. 303, 307 (4th Cir. 2004). The petitioner must demonstrate that his trial attorney's performance was deficient in conveying a plea offer and, were it not for his errors, the petitioner would have accepted the plea offer and would not have proceeded to trial.

The undersigned finds that Petitioner has failed to demonstrate that the State *habeas* Court's rejection of his claim that his trial attorney was ineffective in relating the sentencing consequences respecting the alleged plea offer involved an unreasonable application of clearly established Federal law or was factually unreasonable. First, other than Petitioner's Affidavit attached to his Reply to Respondent's Motions, the undersigned finds nothing in the record indicating that Petitioner was actually offered a plea as he claims. The undersigned further finds Petitioner's rendition of the alleged plea offer inconsistent with applicable West Virginia law and therefore unlikely. Petitioner claims in his Affidavit that his trial attorney told him that he could plead to first degree murder and his sentence would be a "40 years flat." As noted above, murder in the first degree is only punishable by a sentence of life in prison. Assuming nevertheless that Petitioner is mistaken and it was proposed that he plead guilty to committing second degree murder and his attorney informed

32

him and/or he understood that he would be subject to imprisonment for a term of forty years without any possibility of parole, the undesigned finds that Petitioner's attorney's performance was not deficient. The maximum term of imprisonment upon a second degree murder conviction actually is forty years. There is no right or entitlement to parole but only the right to be considered for it. State v. Lindsay, 160 W.Va. 284, 233 S.E.2d 734, 738 - 739 (1977)("One convicted of a crime and sentenced to the penitentiary is never entitled to parole. W.Va.Code, 1931, 62-12-13a, as amended. He is eligible to be considered for parole.") In view of these circumstances, the undersigned finds that Petitioner's trial attorney correctly informed him of the maximum term of imprisonment which the Court would impose if he pled guilty to second degree murder. The undersigned does not consider it objectively unreasonable that Petitioner's trial attorney neglected to advise Petitioner of his eligibility for parole. See Strader v. Garrison, 611 F.2d 61, 63(4th Cir. 1979)("Ordinarily, parole eligibility is . . . an indirect and collateral consequence, of which a defendant need not be specifically advised by the court or counsel before entering a plea of guilty.") Accordingly, the undersigned finds nothing contrary to clearly established federal law or factually unreasonable about the State *habeas* Court's decision in this regard.

> **b.** **Failure to Object to Proceeding to Trial When Dr. Whelan Failed to Appear and Failure to Advance Petitioner's Mental State and Diminished Capacity at the Time of the Offense and the Time of Trial as a Defense.**

The undersigned has summarized the record of proceedings upon Petitioner's claims of mental incompetency in Trial Court and State *habeas* Court proceedings and his withdrawals of those claims. Respecting this claim, the State *habeas* Court stated that "the Court concludes and finds this is a moot issue based upon the Motion of the Petitioner and this Court's decision as to the issue of mental state at the time of occurrence, at the time of the trial and the withdrawal by

petitioner of this count." (Document No. 35, Exhibit 10, pp. 5 - 6, conclusion of law 7c.) The undersigned finds nothing contrary to clearly established federal law or factually unreasonable about the State *habeas* Court's decision.

### c.       Failure to Inform the Jury about Ms. Stewart's Delicate Health.

Respecting Petitioner's assertion that his trial attorney's failure to inform the Jury that Ms. Stewart had cystic fibrosis which made her more susceptible to death by strangulation constituted constitutionally ineffective representation, the State habeas Court stated that "the Court concludes and finds that this is a tactical decision left to the discretion of the attorney as to what evidence needs to be presented and further, this is not a valid defense under the law of West Virginia." (Document No. 35, Exhibit 10, p. 7, conclusion of law 7j.) The undersigned finds nothing contrary to clearly established federal law or factually unreasonable about the State *habeas* Court's decision. Petitioner's assertions of ineffective assistance of counsel have no merit.

### 4.       The *habeas* Court's Alleged Errors.

Errors occurring in state post-conviction proceedings typically cannot serve as a basis for federal *habeas corpus* relief.  See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998) ("[A] challenge to Virginia's state habeas proceedings, cannot provide a basis for federal habeas relief."); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); see also; Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.), cert. denied, 495 U.S. 936, 110 S.Ct. 2183, 109 L.Ed.2d 511 (1990) ("[A]n infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition."); Vail v. Procunier, 747 F.2d 277, 278 (5th Cir. 1984)("Infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief."). This is because federal *habeas* relief is available "in behalf of a person in custody *pursuant to the judgment of a*

*State court*." 28 U.S.C. § 2254(a)(emphasis added). "Even where there may be some error in state post-conviction proceedings this would not entitle [petitioner] to federal habeas corpus relief since [petitioner]'s claim here represents an attack on a proceeding collateral to the detention of [petitioner] and on the detention itself." <u>Williams v. Missouri</u>, 640 F.2d 140, 144 (8th Cir.), <u>cert. denied</u>, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981).

### a.   <u>Refusal to Allow Discovery.</u>

On April 3, 2003, Petitioner filed a Motion for Leave of Court to Conduct Discovery in his *habeas* case. (Document No. 35, Exhibit 9.) Petitioner also submitted Requests for Production requesting (1) any media accounts of his prosecution in the State's possession, (2) a copy of records of the West Virginia State Police respecting his questioning and information about the officers who questioned him, (3) a copy of the subpoena issued for Dr. Whelan, (4) a copy of correspondence about any plea offers the State made, (5) a copy of documents pertaining to Ms. Stewart's health immediately prior to her murder including her diagnosis of cystic fibrosis, (6) a copy of Grand Jury minutes pertaining to Petitioner's prosecution, and (7) a copy of photographs of Ms. Stewart which the State introduced at trial. (<u>Id.</u>) It appears that the *habeas* Court denied Petitioner *habeas* relief by Order filed on January 30, 2004, without allowing discovery as Petitioner requested. (<u>Id.</u>, Exhibit 10.)

As Petitioner noted in his Motion for Leave to Conduct Discovery, Petitioner did not have a right to discovery in his *habeas* proceedings. The allowance of discovery was within the discretion of the State *habeas* Court upon Petitioner's showing of good cause. Good cause for discovery in federal *habeas* proceedings is presented when a petitioner makes a showing through specific allegations that if the facts were developed, the petitioner might be entitled to relief. <u>Moseley v.</u>

French, 6 F.Supp.2d 474, 478 (M.D.N.C. 1998)(Eliason, M.J.). Evidently, the State *habeas* Court found that good cause existed for further factual development only with respect Petitioner's claim of mental incompetency; otherwise, it did not. The *habeas* Court's refusal to allow Petitioner's request for discovery is not properly a subject for review in these Section 2254 proceedings. Petitioner's claim that the *habeas* Court erred in refusing him discovery does not raise a constitutional issue or any basis for federal *habeas* relief.

> **b.** **Rejection of Petitioner's Claim of Unintelligent Waiver of his Right to Counsel in Giving a Statement to the State Police by Virtue of his Drug Use.**

As mentioned above, West Virginia State Troopers S. F. Van Meter and J. H. Zirkle questioned Petitioner about Ms. Stewart's murder on June 16, 1993. The officers began by informing Petitioner that he was not under arrest and was free to leave at any time and discussing Petitioner's right to remain silent and right to counsel. Petitioner initialed a Waiver of Rights form indicating that he understood his rights. (Document No. 35, Exhibit 12, pp. 1 - 2.) Thereafter, Petitioner admitted that he and Ms. Stewart had a violent argument and he choked Ms. Stewart, wrapped and tied a cord around her mouth and throat and tied her hands and feet. (Id., Exhibit 12, pp. 61 - 64.) Petitioner moved to suppress his statement, and the Trial Court considered it at the *in camera* hearing just before opening statements. The record indicates that Petitioner withdrew his motion to suppress. (Id., Exhibit 17, p. 45.) The Court nevertheless heard the testimony of Troopers Zirkle and Van Meter. Trooper Van Meter testified that at the time Petitioner gave his statement he was not under arrest or in custody. (Id., p. 54.) During Trooper Van Meter's questioning, Petitioner's counsel stated that "I have no objection as to his statement as to the facts that happened on the day of the accident." (Id., p. 62.) The Trial Court found Petitioner's statement admissible. (Id., p. 65.) Trooper

36

Van Meter testified at trial that Petitioner did not appear to be under the influence of alcohol or drugs when he gave his statement. He stated that Petitioner "seemed to be normal." (Id., Exhibit 20, p. 207.) Petitioner did not allege error in the admission of his statement on direct appeal.  Petitioner first raised the issue in his State *habeas* proceedings claiming that at the time he gave his statement he was "overmedicated" with psychotropic drugs. The State *habeas* Court found that "there is no evidence to support the allegation of overmedication . . .." (Id., Exhibit 10, p. 4, conclusion of law 6.) The undersigned has read the transcript of Petitioner's statement and finds contrary to Petitioner's claim that Petitioner clearly understood the circumstances under which he was questioned and the questions asked of him and answered the questions meaningfully during the nearly three hours of questioning. The record does not reveal any issue of constitutional magnitude in the Trial Court's admission of Petitioner's statement and the State *habeas* Court's decision is not factually unreasonable.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion to Dismiss and Motion for Summary Judgment (Document Nos. 33 and 35.), **DISMISS** Petitioner's Section 2254 Petition (Document No. 1.) and  remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days,

filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

date: August 23, 2007.

R. Clarke VanDervort
United States Magistrate Judge

38